**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JORGE GUZMAN, | DOCKET NUMBER |
|               Appellant, | SF-0752-15-0170-X-1 |
| v. | |
| DEPARTMENT OF HOMELAND | DATE: July 18, 2024 |
|    SECURITY, | |
|               Agency. | |

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>James P Walsh</u>, Long Beach, California, for the appellant.

<u>Thomas Schramm</u>, Detroit, Michigan, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kener, Member

**ORDER**

¶1      On January 6, 2023, the Board issued an Order denying the agency's petition for review of the administrative judge's August 3, 2018 compliance initial decision. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-C-1, Order (January 6, 2023); *Guzman v. Department of*

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

*Homeland Security*, MSPB Docket No. SF-0752-15-0170-C-1, Compliance File (CF), Tab 21, Compliance Initial Decision (CID). On August 16, 2023, the Clerk of the Board issued an order requesting that the agency submit additional evidence and explanation regarding certain questions. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-X-1, Compliance Referral File (CRF), Tab 6. In addition, on March 15, 2024, the appellant filed a Motion to Hold Agency in Contempt and for Show Cause Order. CRF, Tab 13. For the reasons set forth below, we deny the appellant's motion, find the agency partially compliant, but require additional information from the agency on several issues to determine whether it has met its remaining compliance obligations.

## BACKGROUND

¶2      On September 29, 2017, the administrative judge issued an initial decision granting the appellant's request for corrective action, ordering the agency to reverse the appellant's removal, retroactively restore him to duty, pay the appellant the appropriate amount of back pay, with interest, and adjust benefits with appropriate credits and deductions. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-I-2, Initial Decision (September 29, 2017). Neither party filed a petition for review, and the initial decision became the final decision of the Board.

¶3      On December 13, 2017, the appellant filed a petition for enforcement, alleging that he had neither been reinstated to duty nor received his backpay but, instead, had received an email from the agency stating that he must be mandatorily retired due to his age as of November 21, 2014. CF, Tab 1 at 4-5. On August 3, 2018, the administrative judge issued a compliance initial decision granting the petition for enforcement and ordering the agency to restore the appellant to duty, provide him notice of mandatory retirement, calculate the appropriate back pay with interest, and comply with all other aspects of the September 29, 2017 Order. CID at 8.

¶4        The agency timely filed a petition for review of the compliance initial decision on October 9, 2018. Compliance Petition for Review (CPFR) File, Tab 5. On January 6, 2023, the Board issued an Order denying the agency's petition for review, affirmed the compliance initial decision, and modified the compliance initial decision to set forth additional precedent and clarify the agency's obligation to provide the appellant with status quo ante relief. CPFR, Tab 10 at 2. Specifically, the Board directed the agency to take the following actions: (1) cancel the November 21, 2014 retirement; (2) provide the appellant with the appropriate amount of back pay, with interest, and adjust his benefits with appropriate credits and deductions, for the back pay period of November 21, 2014, through July 31, 2019; and (3) process his mandatory retirement, effective July 31, 2019. *Id.* at 10.

¶5        On June 26, 2023, the agency submitted a "Narrative Statement of Compliance" with the Board's January 6, 2023 Order. CRF, Tab 4. The appellant responded on July 16, 2023, challenging the agency's assertions of compliance on multiple grounds. CRF, Tab 5.

¶6        On August 16, 2023, the Office of the Clerk of the Board issued an order directing the agency to submit additional evidence addressing:

       (1) Whether the agency utilized the correct pay scale in calculating back pay;

       (2) Whether the agency utilized the correct interest calculations under the Back Pay Act. The agency's response must contain pay period-by-pay period printouts showing the interest rate applied and the compounded interest accrual;

       (3) Whether the agency previously paid the appellant a lump sum for annual leave at the time he was originally removed, and how this sum was calculated;

(4) Whether, if the agency previously paid out the appellant's annual leave in a lump sum, the agency erroneously deducted that amount a second time as part of the current back pay calculations;

(5) Whether the current back pay calculations include payment for the annual leave the appellant would have accrued during the back pay period, and how this amount was calculated;

(6) Whether and how the sick leave the appellant would have accrued during the back pay period has been calculated and accounted for, including whether it was or should have been reported to the Office of Personnel Management (OPM) as a potential factor adjusting the appellant's annuity;

(7) Whether the agency made its Thrift Savings Plan (TSP) basic and matching contributions to the TSP Fund, and how such amounts were calculated, *see, e.g.*, 5 C.F.R. §§ 550.805(h), 1605.13;

(8) Whether the agency provided to the TSP Fund amounts the appellant designated as retirement withholding, and how such amounts were calculated, see, e.g., 5 C.F.R. §§ 550.805(h), 1605.13;

(9) Whether the TSP Fund received the amounts discussed in (7) and (8) and certified that it applied appropriate breakage;

(10) Whether the appellant is entitled to any retirement contributions separate from TSP, and how those contributions were calculated and accounted for;

(11) A detailed accounting of how Healthcare Insurance Tax or Medicare Tax was calculated;

(12) A detailed accounting of the calculations for Federal and state income tax withheld; and

(13) Whether the appellant's revised retirement date, salary information, sick leave accrued during the back pay period, and any other

pertinent information have been reported to OPM so as to effect any required adjustments to his annuity.

CRF, Tab 6 at 2-3.

¶7    Following this Order, both parties filed submissions. CRF, Tabs 9, 12, 13. On March 15, 2024, the appellant filed a motion to show cause and hold the agency in contempt, contending that the agency had intentionally violated the Board's Orders and improperly issued back pay to the appellant "prior to any decision by the Board." CRF, Tab 13 at 15-20. The agency filed a response to the motion on April 3, 2024, and the appellant filed a reply on April 15, 2024. For the reasons set forth below, we find the agency in partial compliance with the September 29, 2017 decision and deny the appellant's motion for an order to show cause.

## ANALYSIS

¶8    When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden of proving its compliance with a Board order. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Id.* The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

Backpay Calculation

¶9    The August 16, 2023 Order directed the agency to submit evidence regarding whether it used the correct pay scales to calculate the appellant's back pay. CRF, Tab 6 at 2. The agency asserts that it used the correct pay scales for

Law Enforcement Officers using the Locality Pay Tables available on the OPM website. CRF, Tab 9 at 6-7, 17. In Exhibit C to the Narrative Response, the agency provided a table breaking down the appellant's wages by pay period to arrive at a gross backpay amount of $759,010. *Id.* at 34-44.

¶10    In his response, the appellant does not contest that the agency used the correct pay scales. CRF, Tab 12 at 36-37, 42. However, the appellant contends that the correct amount of back pay wages due is $760,264.28. *Id.* at 37. He asserts that the agency wrongly calculated the wages for 2014 "due to LEAP [Law Enforcement Availability Pay] wages deducted from the biweekly pay cap," which resulted in an overall deficit of $752.80. *Id.* at 42; *see also* CRF, Tab 9 at 34. The agency has not addressed this contention. Accordingly, the agency must explain why the LEAP wages of $752.80 were deducted from the 2014 back pay.

### "Gross-up"

¶11    The appellant also argues that he is entitled to a "gross-up," or "tax consequences adjustment," of $979,500.67 for federal taxes and $189,644.97 for state taxes. CRF, Tab 12 at 46. However, the Board does not have the authority to award the appellant compensation for any increase in his tax liability. *See Holtgrewe v. Federal Deposit Insurance Corporation*, 65 M.S.P.R. 137, 140 (1994) (citing *Harris v. Department of Agriculture*, 53 M.S.P.R 78, 82 (1992), *aff'd*, 988 F.2d 130 (Fed. Cir. 1993) (Table) (Board lacks the authority to order any remedy for the tax consequences of a back pay award)). Accordingly, we reject this claim of noncompliance and find that the agency is not required (or permitted) to adjust the back pay amount to relieve the appellant of his tax burden.

### Interest Calculation

¶12    The August 16, 2023 Order directed the agency to provide evidence that it used the correct interest rates to calculate the amount of back pay interest. CRF, Tab 6 at 2. The agency states that it used the OPM Interest Back Pay Calculator to

validate the amount of interest calculated. CRF, Tab 9 at 7-8, 17-18. The agency also produced a Back Pay Computation Summary Report, detailing the amount of interest accrued per pay period.[2] *Id.* at 47-66.

¶13 The appellant asserts that, rather than calculating interest on the appellant's back pay wages alone, the agency should have aggregated interest based on other benefits, such as his lump-sum payment for unused annual leave and retirement benefits, in addition to his wages. CRF, Tab 12 at 26-27. The appellant also argues that the agency should have added a 3% penalty to the interest rate used in the OPM Interest Back Pay calculator. *Id.* at 26.

¶14 With respect to the appellant's first argument, the Back Pay Act and its implementing regulations specify that interest is to be paid on back pay but not on lump-sum payments for annual leave or retirement payments. 5 U.S.C. § 5596(b)(2)(A) (interest is available for back pay but not for lump-sum annual leave payments); 5 C.F.R. § 550.803 (defining "pay, allowances, and differentials" to include "pay, leave, and other monetary employment benefits" and excluding lump-sum payments for annual leave and retirement benefits); *see also Davis v. Department of the Interior*, MSPB Docket No. AT-0752-09-0860-C-2, Order at 3 (Feb. 28, 2024) (finding the agency properly did not pay interest on a lump sum annual leave payment). Accordingly, the agency did not err in computing interest on the appellant's back pay wages alone.

¶15 Moreover, we do not agree that the agency must add an additional 3% penalty to the interest rates it used. The Back Pay Act provides for interest to be paid at the overpayment rate in the Internal Revenue Code, 26 U.S.C. § 6621(a)(1).[3] 5 U.S.C. § 5596(b)(2)(B). A comparison of the overpayment rates

---

[2] The agency asserted that the National Financial Center (NFC) performed the actual calculations of the amount of interest due the appellant, but the agency was able to confirm the amount was correct by generating its own back pay summary report. *Id.* at 5, 18.

[3] The overpayment rate consists of the Federal short-term rate plus three percentage points. 26 U.S.C. § 6621(a)(1).

published by the Internal Revenue Service (as well as by OPM) and the rates used in the agency's Back Pay Computation Summary Report shows that the agency used the correct interest rates. Thus, we find that the agency used the correct method for calculating interest, but we cannot determine the correct interest amount until we have determined the outcome of the appellant's challenge to the back pay calculation (supra).

Annual Leave and LEAP Payment

¶16 The August 16, 2023 Order directed the agency to determine whether it had previously paid the appellant a lump sum for unused annual leave at the time of his original removal, whether it had erroneously deducted that amount a second time from his back pay, and whether it had paid the appellant a lump sum for unused annual leave during the back pay period. CRF, Tab 6 at 2. The agency responds that it paid the appellant a lump sum of annual leave and LEAP at the time of his separation on November 21, 2014, which consisted of $15,733.52 for 209 hours of annual leave and $922.18 for 49 hours of LEAP. CRF, Tab 9 at 9. The agency then deducted that amount once from the appellant's back pay calculations, in accordance with 5 C.F.R. § 550.805(e)(iv). *Id.* at 9-10. The agency also submitted evidence that it had calculated that the appellant would have accrued 976 hours of annual leave during the back pay period, in addition to the 209 hours from the previous annual leave amount, for a total of 1185 hours of leave (a payment of $95,167.60) and 65 hours of LEAP (a payment of $1,227.60), resulting in a gross lump payment of $96,395.20. *Id.* at 10-11. The agency asserts that the lump sum payment "extends into 2020 and is subject to the 2020 annual pay adjustment for the Los Angeles locale." *Id.* at 10-11, 20.

¶17 The appellant agreed that he had accumulated 1185 hours of annual leave but disagreed that he should have been paid at a 2020 rate for part of the lump sum payment and contended that the agency made a similar error in calculating the LEAP payment. CRF, Tab 12 at 22-23. Accordingly, the appellant calculated that he was owed $94,539 as an annual leave lump-sum payment. *Id.* Similarly,

the appellant contended that he was not due a 2020 LEAP payment of $1,227.60. *Id*. Because the appellant contends that the agency owed him *less* than it paid him, any error by the agency is in the appellant's favor. Accordingly, we find the agency in compliance on this point.

Sick Leave

¶18 The August 16, 2023 Order directed the agency to determine whether the sick leave the appellant would have accrued during the back pay period had been calculated and accounted for, including whether it had been reported to OPM as a potential factor adjusting the appellant's annuity. CRF, Tab 6 at 3. The agency responds that sick leave is not paid as a lump sum but would be provided to OPM to determine whether it would affect his annuity. CRF, Tab 9 at 11.

¶19 The appellant asserts that he is entitled to, and should receive interest on, a lump-sum payment of unused sick leave. CRF, Tab 12 at 23-24. However, there is nothing in the Back Pay Act that authorizes lump-sum payments for sick leave. *DeOcampo v. Department of Army*, 551 Fed. App'x. 1000, 1003 (Fed. Cir. 2014) (Table) (finding that the Back Pay Act does not authorize lump-sum payments for sick leave). Accordingly, the appellant is not entitled to a lump-sum payment for unused sick leave. However, the agency must provide evidence that it submitted the appellant's sick leave calculation to OPM, as it stated it would do.

Health Insurance Benefits

¶20 The appellant contends that to restore him to the status quo ante, he is due the health insurance premiums that the agency would have paid him had he remained employed. RCF, Tab 12 at 24. The Back Pay Act does not authorize the payment of retroactive health benefit premiums unless the appellant elects to retroactively reinstate health care coverage, in which case the appellant's premiums will be deducted from his back pay. 5 C.F.R. § 550.805(e)(3)(iii); *see also Sowa v. Department of Veterans Affairs*, 100 M.S.P.R. 5, ¶¶ 6-7 (2005) (determining the appellant could not receive reimbursement for healthcare

premiums under the Back Pay Act.). The appellant does not state that he has elected to retroactively reinstate his health care coverage. Accordingly, we find the agency in compliance on this point.

Thrift Savings Plan

¶21 The Board's Order directed the agency to explain whether it had made its TSP basic and matching contributions to the TSP Fund and how such amounts were calculated, whether the agency had provided the appellant's retirement withholdings to the TSP and how such amounts were calculated, and whether the TSP Fund had received these amounts and certified that it applied appropriate breakage. CRF, Tab 6 at 3.

¶22 The agency reported that the National Finance Center (NFC) had calculated TSP contributions and had determined that there had previously been an error. RCF, Tab 9 at 11. The NFC then recalculated the appellant's TSP contributions and provided a TSP Fund Report, detailing contributions and breakage. *Id.* at 12, 22, 97-104. The TSP Fund Report appears to state that the employee contribution equaled $45,168.68, the agency's automatic contribution equaled $9,868.73, and the matching contribution equaled $39,477.58, for a total of $94,514.99. *Id.* at 97. Notably, the agency's back pay summary states that the appellant's TSP contribution was $37,950.52. *Id.* at 71.

¶23 The appellant calculated that the appellant's contribution would be $37,988.14, and the agency's matching benefit equaled $37,988.14, for a total of $75,976.28. Tab 12 at 46-47, 65. The appellant also noted that the agency had listed three different amounts for the calculated wages for retirement. *Id.* at 48; *see also* CRF, Tab 9 at 23, 44, 71. The appellant also states that the appellant wishes to restore his $227,969 in TSP withdrawals made during separation under 5 C.F.R. § 1605.13(d). CRF, Tab 12 at 48. The agency must address the appellant's calculations, explain why its evidence lists three different versions of the appellant's wages, as well as different amounts for appellant's TSP

contributions, and explain whether it has enabled the restoration of the appellant's TSP withdrawals to his account.

Retirement Contributions Separate From TSP

¶24    The Board's Order directed the agency to explain whether the appellant was entitled to any retirement contributions separate from TSP and how those contributions were calculated and accounted for.  CRF, Tab 6 at 3.

¶25    The agency responded that it requested the responsive information from NFC, which responded:

Retirement deductions based on total base wages@ .0130

FY 2014 $456,175.20 x .0130

FY 2017 $163,038.40 x .0130

FY 2018 $139,796.80 x.0130

RCF, Tab 9 at 13.

¶26    The appellant asserted in response that these numbers were not consistent with agency-calculated wages, omitted certain years, and provided no explanation of how the alternative wages were calculated.  RCF, Tab 12 at 25-26.  We agree. NFC is the agency's agent, and thus, the agency is responsible for ensuring that NFC provides a clear explanation of these calculations.  *See Raymond v. Department of the Navy*, 116 M.S.P.R. 223, ¶¶ 14-17 (2011) (rejecting "unsworn, vague" Defense Financial and Accounting Services (DFAS) memo and spreadsheet as evidence of compliance, in part because they lacked narrative explanation of calculations); *see also Tichenor v. Department of the Army*, 84 M.S.P.R. 386, ¶ 8 (1999) (rejecting argument that DFAS, not the agency, improperly withheld payment from the appellant because DFAS was the agency's agent).

Health Insurance Tax or Medicare Tax

¶27    The Board's Order requested a detailed accounting of how Healthcare Insurance Tax or Medicare Tax was calculated.  RCF, Tab 6 at 3.  The agency

responded that NFC stated that "Medicare wages are calculated on $200,000 x 1.45 and on wages over $200,000 deducted at 2.35%." RCF, Tab 9 at 13. The appellant responded that this was not a "detailed accounting." RCF, Tab 12 at 29. We agree. The agency must provide a detailed accounting of these taxes. *See Raymond*, 116 M.S.P.R. 223, ¶¶ 14-17.

### Federal and State Income Taxes

¶28 The Board ordered the agency to provide a detailed accounting of the calculations for Federal and state income taxes. RCF, Tab 6 at 3. The agency responded that NFC had the responsive information and stated, "Federal and state taxes were aggregated based on the number of pay periods." RCF, Tab 9 at 14. Again, the agency must provide a more detailed accounting of these calculations. *See Raymond*, 116 M.S.P.R. 223, ¶¶ 14-17.

### Reporting Information to OPM

¶29 The Board's Order also requested the agency disclose whether certain relevant information had been reported to OPM "so as to effect any required adjustments to his annuity." RCF, Tab 6 at 3. The agency responded that NFC possessed the responsive information but "did not provide the agency with responsive information." RCF, Tab 9 at 14. Again, the agency must disclose this information so the appellant may determine whether he agrees with the calculations. *See Raymond*, 116 M.S.P.R. 223, ¶¶ 14-17.

### The Timing of the Agency's Payment of the Back Pay

¶30 In his Motion for Order to Show Cause, the appellant complains that the agency has already attempted to pay the appellant his back pay "prior to any decision by the Board." CRF, Tab 13 at 20. The agency, however, is complying with the Board's January 6, 2023 Order, which directed the agency to provide the appellant with the appropriate amount of back pay, with interest. CPFR, Order at 10. The agency is not acting in bad faith by paying the appellant what it has calculated as the appellant's back pay. If those calculations change, the agency

will be required to account for the difference. However, as the appellant has apparently returned the back pay he received, the agency will need to show that it has paid him again.

## ORDER

The appellant's Motion for Order to Show Cause is denied.

Within **30 calendar** days of this Order, the agency shall submit the evidence discussed above. Specifically, the agency must:

(1) Provide an explanation of why LEAP wages of $752.80 were deducted from the 2014 back pay amount;

(2) Recalculate the interest due if the appellant's back pay amount changes based on number (1) above;

(3) With respect to the appellant's TSP account, address the appellant's calculations, explain why its evidence lists three different versions of appellant's wages, as well as different amounts for appellant's TSP contributions, and explain whether it has enabled the restoration of the appellant's TSP withdrawals to his account.

(4) Provide a clear explanation and calculation of retirement contributions separate from the TSP;

(5) Provide a detailed accounting of how Healthcare Insurance Tax or Medicare Tax was calculated;

(6) Provide a detailed accounting of the calculations for Federal and state income tax withheld;

(7) Explain whether the appellant's revised retirement date, salary information, sick leave accrued during the back pay period, and any other pertinent information have been reported to OPM so as to effect any required adjustments to his annuity.

If the agency fails to submit the required information, the Board may issue an order to show cause why sanctions should not be imposed against the

responsible agency official pursuant to 5 U.S.C. § 2304(e)(2)(A) and 5 C.F.R. § 1201.183(c).

The appellant shall submit any response within **21 calendar days** of the date of service of the agency's submission.  If the appellant does not respond to the agency's submission regarding compliance within 21 calendar days, the Board may assume that the appellant is satisfied and dismiss the petition for enforcement.

*Gina K. Grippando*

FOR THE BOARD:        _____
                      Gina K. Grippando
                      Clerk of the Board

Washington, D.C.